IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

SALLY E. RICE, as Trustee for the
Winston Lawrence Rice Trust, on behalf of
herself and all others similarly situated,

   Plaintiff,

v.

BURLINGTON RESOURCES OIL & GAS
COMPANY LP,

   Defendant.

Case No. 20-cv-00431-GKF-CDL

**OPINION AND ORDER**

  Before the court is defendant Burlington Resources Oil & Gas Company LP's Motion for Judgment on the Pleadings [Doc. 31]. For the reasons set forth below, the motion is denied.

**I. Background**

  This is a putative class action relating to interest owed on untimely payments of oil-and-gas royalties. On August 25, 2020, plaintiff Sally E. Rice brought this action against Burlington Resources Oil & Gas Company LP (Burlington), the operator of a well in which she has an ownership interest. Rice alleges a single claim under North Dakota law for Breach of Statutory Obligation to Pay Interest, pursuant to N. D. C. C. § 47-16-39.1. [Doc. 2, pp. 8-9, ¶¶ 40-47]. Burlington moves for judgment on the pleadings, arguing that Rice's claim is barred by the applicable statute of limitations.

**II. Allegations of the Complaint**

  Rice alleges the following:

  North Dakota law requires operators like Burlington to pay royalties to mineral owners within 150 days of marketing the oil or gas. When an operator like Burlington fails to pay

royalties to a mineral owner within 150 days after the oil or gas is sold, the operator owes 18% interest on the unpaid royalty. The statute expressly states there is no demand requirement before a mineral owner is entitled to statutory interest. Despite this, Burlington does not automatically pay interest on untimely payments.

Instead, through its agent ConocoPhillips, Burlington has adopted a policy of requiring mineral owners to first demand statutory interest before it will pay what is owed. ConocoPhillips directs mineral owners to contact its Bartlesville, Oklahoma, office when they have questions about their payments. Decisions on whether Burlington owes interest on late payments, and whether Burlington will pay interest on those late payments, are made there by ConocoPhillips.

Rice serves as trustee for the Winston Lawrence Rice Trust (the "Trust"). The Trust owns an interest in oil and gas produced from the Haydon 44-22TFH-ULW well operated by Burlington in McKenzie County, North Dakota. ConocoPhillips remits royalty payments from this well on behalf of Burlington. Burlington failed to pay the Trust royalties to which it is entitled within 150 days of marketing the Trust's mineral interests. This included, for example, that for oil Burlington marketed from the Haydon 44-22TFH-ULW well in December 2014, the Trust did not receive payment until February 29, 2016. When Burlington finally paid the royalties owed to the Trust in February 2016, Burlington did not include the 18% interest required by North Dakota statute.

Rice brings this putative class action on behalf of "[a]ll non-excluded persons or entities owning mineral interests in North Dakota wells who: (1) received untimely payments from Burlington for royalties in North Dakota wells; and (2) whose payments did not include the 18% interest required by law."

### III. Legal Standard

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "A motion for judgment on the pleadings 'should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quoting *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)). The standard for dismissal under Fed. R. Civ. P. 12(c) is the same as for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to establish the claim. *Id.* at 556. The court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Colony Ins. Co.*, 698 F.3d at 1228.

### IV. Analysis

Burlington argues the court should grant judgment on the pleadings because plaintiff's claim for Breach of Statutory Obligation to Pay Interest, N.D.C.C. § 47-16-39.1, is barred by North Dakota's statute of limitations for penalties and forfeitures, which requires an action to be

brought within three years after it accrues. Plaintiff does not dispute that her action would be untimely under the three-year statute of limitations. Thus, the issue presented is whether North Dakota's general six-year statute of limitations for statutory actions, N.D.C.C. § 28-01-16(2), or North Dakota's three-year statute of limitations for penalties and forfeitures, N.D.C.C. § 28-01-17(2), governs plaintiff's claim.

   A. *General Principles of Statutory Interpretation of North Dakota Law*

When a federal case contemplates a question of state law not settled by the courts of that state, it becomes the responsibility of the federal court to "attempt to predict how [that state's] highest court would interpret [the issue]." *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 852 (10th Cir. 2015) (quoting *Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 875 (10th Cir. 2013)). The court may " 'consider all resources available' in doing so, 'including decisions of [the relevant state's] courts, other state courts[,] and federal courts, in addition to the general weight and trend of authority.' " *Id.* at 852 (quoting *In re Dittmar*, 618 F.3d 1199, 1204 (10th Cir. 2010)).

As the North Dakota Supreme Court has explained, the "primary objective in interpreting a statute is to determine the legislature's intent, and [the court should] initially look to the language of the statute to determine intent." *Locken v. Locken*, 797 N.W.2d 301, 304 (N.D. 2011). The court must "construe[] [the statute] as a whole and []harmonize[e] [it] to give meaning to relevant provisions." *Van Sickle v. Hallmark & Assocs., Inc.*, 840 N.W.2d 92, 108 (N.D. 2013). "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." *Id.* (citing N.D.C.C. § 1–02–02). "The letter of a statute cannot be disregarded under the pretext of pursuing its spirit when the language of the statute is clear and unambiguous." *Locken*, 797 N.W.2d at 305. Under North Dakota's rules of statutory

4

interpretation, "a specific statute prevails over a general statute." *Kittleson v. Grynberg Petroleum Co.*, 876 N.W.2d 443, 448 (N.D. 2016). "Another rule of construction relating to statutes of limitation is that the longer statute of limitations generally applies if there is a question about applicability." *Id.*

If "the language of a statute is ambiguous or of doubtful meaning or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, the court may resort to extrinsic aids to interpret the statute." *Stutsman Cnty. v. State Hist. Soc'y*, 371 N.W.2d 321, 325 (N.D.1985). "A statute is ambiguous if it is susceptible to different, rational meanings." *Locken*, 797 N.W.2d at 305 (internal quotation marks omitted). In such cases, the court may consider, among other factors, (1) the object sought to be attained by the statute; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) the common law or former statutory provisions, including laws upon the same or similar subjects; (5) the consequences of a particular construction; (6) the administrative construction of a statute; and (7) the preamble. *Id.*; N.D.C.C. § 1-02-39.

B. *Statutory Provisions at Issue*

As previously stated, Rice brings her claim pursuant to N.D.C.C. § 47-16-39.1, which provides:

> If the operator under an oil and gas lease fails to pay oil or gas royalties to the mineral owner or the mineral owner's assignee within one hundred fifty days after oil or gas produced under the lease is marketed . . . or if the operator fails to pay oil or gas royalties to an unleased mineral interest owner within one hundred fifty days after oil or gas production is marketed from the unleased mineral interest owner's mineral interest, **the operator thereafter shall pay interest on the unpaid royalties, without the requirement that the mineral owner or the mineral owner's assignee request the payment of interest, at the rate of eighteen percent per annum until paid[.]**

N.D.C.C. § 47-16-39.1 (emphasis added).

5

The general statute of limitations under North Dakota law, N.D.C.C. § 28-01-16(2), provides that an action upon liability created by statute, other than a penalty or forfeiture, must be "commenced within six years after the claim for relief has accrued." N.D.C.C. § 28-01-17(2) provides that "an action upon a statute for penalty or forfeiture, if the action is given to the party aggrieved, or to such party and the state, unless the statute imposing it prescribes a different limitation," must be brought "within three years after the claim . . . has accrued." The issue of which statute applies turns on whether the interest under N.D.C.C. § 47-16-39.1 constitutes a penalty under North Dakota law. The parties agree that North Dakota courts have not addressed this issue.

### C. Distinguishing Between Penal and Remedial Statutes

"Delineation [between penal and remedial statutes] usually turns on the nature of the evil to be remedied, with penal statutes redressing wrongs to the public and remedial statutes remedying wrongs to individuals." 3 Sutherland Statutory Construction § 60:3 (8th ed.); *Huntington v. Attrill*, 146 U.S. 657, 668 (1892). However, the practical means of determining this distinction has not been clearly established. Some courts give significant weight to whether the alleged penalty is paid to the government or an individual who suffered wrong. *See, e.g., Stone v. Travelers Corp.*, 58 F.3d 434, 438-39 (9th Cir. 1995) (holding the longer available statute of limitations applied because the $100 per day recovery authorized by ERISA for failure to disclose his records within thirty days was not a penalty since the "wrong seeme[ed] substantially more private than public," the private party bringing suit received the benefit of the payment, and damages were difficult to ascertain). Others have held that the "penal/compensatory distinction turns on whether statutory damages are tied to actual injury, rather than who was harmed by the wrong." *See, e.g., Rucker v. Benesight, Inc.*, 2008 WL

11349789, at *5 (D. Idaho Sept. 22, 2008) (applying the reasoning of *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal. App. 4th 1236, 1245 (1998)); *but see Porter v. Household Finance Corp. of Columbus*, 385 F. Supp. 336, 341 n.6 (S.D. Ohio 1974) (noting "a right of action is not penal because it establishes a minimum recovery which does not reflect actual damages" (citing *Brady v. Daly*, 175 U.S. 148, 154-57 (1899)).

Rice cites *Amerada Hess Corp. v. Conrad*, 410 N.W.2d 124 (N.D. 1987) for the proposition that the North Dakota Supreme Court has given the term "interest" compensatory, rather than penal, meaning. In *Amerada Hess*, the North Dakota Supreme Court held "that interest on unpaid taxes after their due date does not constitute a penalty or forfeiture within the meaning of the [tax] statute but is "intended to compensate the Government for the delay in payment of the tax." *Id.* at 137. Though *Amerada Hess* may, at first glance, appear helpful in resolving the issue at bar, it is not. The holding in *Amerada Hess* is *sui generis*, in a class of its own, because the North Dakota Supreme Court applied a principle specific to tax law:

> Because a penalty which is created by statute for a failure to pay a tax assessment becomes a part of the tax itself, courts construing statutes of limitation similar to [North Dakota's two-year statute of limitations upon a statute for forfeiture or penalty to the state] have concluded that the penalty arising upon delinquency of a statutory liability to pay a tax does not constitute a penalty or forfeiture within the meaning of the statute of limitations.

*Id. Amerada Hess* is therefore of no assistance here.

Almost a century ago, the United States Supreme Court described the difference between penalty and interest in the bankruptcy context: "[a] penalty is a means of punishment; interest a means of compensation." *United States v. Childs*, 266 U.S. 304, 307 (1924). Elsewhere, the Supreme Court explained the test for whether a statute is penal as "in the strict and primary sense, . . . whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual." *Huntington*, 146 U.S. at 668; *see* 82 C.J.S. Statutes § 529 ("The distinction between

7

a remedial and penal statute lies in the fact that the latter is designed solely to punish, while the former is designed simply to enforce restitution to those specifically damaged."); *see also Bracken v. Harris & Zide, L.L.P.*, 219 F.R.D. 481, 484 (N.D. Cal. 2004) ("If the purpose of the statute is to redress an individual wrong it is more likely to have a remedial purpose" (citing *Riggs v. Gov't Emps. Fin. Corp.*, 623 F.2d 68, 72 (9th Cir. 1980)). And the following state supreme courts have looked to the statute's primary purpose when distinguishing between penal and remedial statutes. The Supreme Court of Florida stated that "[i]f the redress is remedial to an individual and the public is indirectly affected thereby, the statute is not regarded as solely and strictly penal in its nature." *Atl. Coast Line R. Co. v. State*, 74 So. 595, 627-28 (Fla. 1917) (quoting *State v. Atl. Coast Line R. Co.*, 47 So. 969, 980 (Fla. 1908). The Supreme Court of Ohio concluded that "[b]ecause ' "most modern social welfare legislation has a *dual purpose* of remedying harm to the individual and deterring socially inimical business practices[,]" ' what is important in classifying a statute as remedial or penal is its primary purpose." *Rice v. CertainTeed Corp.*, 704 N.E.2d 1217, 1220 (Ohio 1999). "[A] law is not penal merely because it imposes an extraordinary liability on a wrongdoer in favor of a person wronged . . . [beyond] damages suffered by him." *Id.*

### D. Interpretation of N.D.C.C. § 47-16-39.1

Burlington argues that N.D.C.C. § 47-16-39.1's interest provision should be categorized as a penalty because (1) decisions from the District of North Dakota repeatedly refer to that provision as "penalty interest" and (2) the 18% statutory rate is a penalty when compared to current North Dakota regulatory practice.

#### 1. The Statutory Text

The court first looks to the text of the statute. As Rice notes, the statute does not use the term *penalty*. And any notion that the legislature intended the 18% interest provision as a

penalty by implication is undercut by the fact that the legislature regularly uses "penalty" and "interest" as distinct terms within the same statute. *See* [Doc. 35-1], wherein Rice lists 242 instances in which the North Dakota legislature used the term "penalty" or "penalties" in the same sentence as the term "interest."

Placing an emphasis on the association between the term "interest" and its compensatory purpose is also consistent with the definition of "interest" in Black's Legal Dictionary. *See Interest*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The compensation fixed by agreement or allowed by law for the use or detention of money, or for the loss of money by one who is entitled to its use."); *see also Interest*, BLACK'S LAW DICTIONARY (5th ed. 1979) ("Interest is the compensation allowed by law or fixed by the parties for the use or forbearance or detention of money."). In addition, the statutory text instructs that the interest be paid directly to the mineral owner, thereby compensating the mineral owner for the late payment of the royalties.

Finally, the neighboring statutory provision—§ 47-16-39.2—shows that the North Dakota legislature knows how to draft a statute imposing a penalty when it so chooses. The statute imposes a civil penalty of $2,000.00 for every day a person obligated to pay royalties to the state board of university and school lands fails to send the royalty payment and production records to the board. The North Dakota legislature said nothing of penalties in § 47-16-39.1 but did so expressly in the very next statutory section. Had the legislature intended the 18% interest to be construed as a penalty, the neighboring statute evidences that the legislature was entirely capable of doing so.

The court finds and concludes that the text of § 47-16-39.1 is clearly and unambiguously remedial rather than penal. And to the extent a question remains about the appropriate statute of

9

limitations, the longer six-year statute of N.D.C.C. § 28-01-16(2) applies. *Kittleson*, 876 N.W.2d at 448.

### 2. Caselaw

#### i. North Dakota Caselaw

Since the court has concluded that § 47-16-39.1 is unambiguous, this analysis could end here. However, for the reasons stated below, the court concludes the case law cited by the parties supports the same conclusion.

In *Kittleson, supra*, the North Dakota Supreme Court considered whether a four-year, six-year, or ten-year statute of limitations applied to an action for underpayment of royalties and held that the ten-year limitation period applies. 876 N.W.2d at 450. In reaching that decision, the court applied the rule of construction relating to statutes of limitations that the longer statute of limitations generally applies if there is a question about applicability. *Id.* at 448. The instant case is distinguishable because Rice's claim is for interest owed on untimely royalty payments, not for underpayment of royalties. However, as in *Kittleson*, if there is a question about which statute of limitations applies, the longer limitation period will be applied.

Burlington cites five unpublished orders entered by a Magistrate Judge in the U.S. District Court for the District of North Dakota, Northwestern Division. Three of the orders were issued in a single case; the other two orders were also issued in another single case. Two of the five orders relate to motions for attorney's fees and costs; the other three address motions for summary judgment. The orders refer to the interest provision in § 47-16-39.1 as "penalty interest." None of the orders address the statute of limitations issue raised in this case.

This court concludes that the Magistrate Judge's use of the term "penalty interest" is not instructive. In both cases, the Magistrate Judge recognized that the purpose of § 47-16-39.1 is remedial. *See, e.g., Greggory G. v. Burlington Resources Oil & Gas Co., LP*, 2013 WL 6150783,

at *7-9 (D.N.D. Nov. 22, 2013); *Tank v. Burlington Res. Oil & Gas Co., LP*, 2013 WL 3766526, at *12 (D.N.D. July 16, 2013);[1] *Renbarger v. Zavanna, LLC*, 2014 WL 791853, at *2 (D.N.D. Feb. 25, 2014). Thus, the use of the term "penalty interest" in orders pertaining to other issues carries no weight in deciding the issue before this court. Indeed, the Magistrate Judge's recognition of the statute's remedial purpose is more significant to the analysis here.

### ii. Out-of-State Caselaw

Wyoming's statute governing interest on late-paid oil-and-gas proceeds is WYO. STAT. § 30-5-303(a). It provides for 18% interest and was enacted only a year after the 18% interest provision was added to North Dakota's statute. Just as in North Dakota, the overall purpose of the Wyoming statute has most often been construed as remedial; however, the interest provision has been discussed generally as a "penalty." *Nucor, Inc. v. Petrohawk Energy Corp.*, 2015 WL 7009114, at *5 (D. Wyo. Nov. 12, 2015). Though the Wyoming federal court recognized that Wyoming's Supreme Court had called the 18% interest provision a penalty multiple times, it noted the Supreme Court had never attempted to discern which statute of limitations applied. *Id.* at *6. The court construed the statute prescribing a relatively short period for suit narrowly and applied the longer statute of limitations. *Id.*; *see also Town of Moorcroft v. Enron Oil Trading & Transp. Co.*, 986 F.2d 1429, 1993 WL 34700, at *2 (10th Cir. Feb. 8, 1993) (unpublished) (18% interest in Wyoming statute was not a penalty for statute of limitations purposes, though courts have referred to the interest as a "penalty," because overall purpose of the act was to "stop producers from using owners' money for their own benefit," "the eighteen percent interest was compensation for that use," and another section of the act specifically addressed penalties).

---

[1] Greggory G. and Tommy S. Tank were plaintiffs in the same action. *See Greggory G.*, 2013 WL 6150783; *Tank*, 2013 WL 3766526.

Burlington points to *Alabama Department of Conservation & Natural Resources v. Exxon Mobil Corp.,* 11 So.3d 194, 200-01 (Ala. 2008), in which the Alabama Supreme Court addressed Alabama's statute imposing interest for non-payment of royalties. However, the issue there was whether the statutory interest rate for failure to pay royalties should be applied as the postjudgment interest rate in a final judgment in favor of the state. The decision does not appear to be applicable to the issue at bar.

### 3. Legislative History

Both parties discuss the statute's legislative history in support of their respective positions. It is a longstanding principle that absent ambiguity a court cannot rely on legislative history to interpret a statute. *United States v. Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008). As set forth above, the court finds that the text of § 47-16-39.1 to be clear and unambiguous, therefore a review of legislative history is unnecessary. In addition, this court is distrustful of legislative history "as the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends." *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring). However, insofar as the parties have briefed the legislative history, and mindful of the possibility that another jurist might find an ambiguity in the statute, the court will consider the legislative history of the statute as set forth by the United States District Court for the District of North Dakota in *Tank*, 2013 WL 3766526, and in the public records of which this court may take judicial notice.

Section 47–16–39.1 was originally enacted in 1961 and authorized a court to cancel a lease for untimely payment of royalties. *Tank,* 2013 WL 3766526, at *8. "The legislative history for the 1961 law suggests it was enacted because mineral owners were complaining about what they perceived to be unreasonable delays in the payments of royalty and that their only apparent remedy was to sue to recover the amount of royalty due." *Id.*

In 1981, the North Dakota legislature amended § 47–16–39.1 to provide that, if an operator under an oil and gas lease failed to pay royalties due the mineral owner or its assignee within 150 days of when oil and gas was first produced and marketed, the unpaid royalties would thereafter bear interest at the rate of 18%. *Tank*, 2013 WL 3766526, at *8. The reasons for requiring interest to be paid after 150 days were twofold: (1) "mineral owners were complaining that well operators were continuing to delay payments of royalty without good excuse so that they could use the suspense money 'interest free' " and (2) the remedy of lease cancellation enacted in 1961 "proved to be ineffective because the courts were reluctant to do so." *Id.* Section 47–16–39.1 has been amended five more times since—in 1995, 2007, 2009, 2011, and 2021. *Id.* at *9-12; N.D.C.C. § 47–16–39.1 (2021). Though the substance of these amendments had no impact on the applicable statute of limitations for a claim pursuant to § 47–16–39.1, the legislative history for the 2009 amendment offers useful insight.[2]

Both parties include remarks made by Representative David Drovdal in a 2009 hearing before the House Natural Resources Committee. Drovdal referred to the 18% as a "penalty" but then stated that "the purpose was not to collect penalty but to give payment to the royalty owner in a reasonable time." *H.B. 1071 Legislative History*, *supra*, at 3.

Another representative, Shirley Meyer, gave her opinion on the provision's purpose and its evolution:

> What brought this [statute] about in the eighties were operators delaying payment to royalty owners up to three years with the only remedy being District Court. The beneficiary of the use of this money should be the royalty owner because upon the sale of the

---

[2] In response to Burlington's motion, Rice includes as Exhibit 3 a 59-page exhibit pertaining to the legislative history of § 47–16–39.1. The exhibit is a copy of the publicly available Legislative History for the 2009 amendment to § 47–16–39.1. *See H.B. 1071, 61st Assembly – 2009: House Bill and Resolution Histories*, N.D. LEGIS. BRANCH, available at https://www.legis.nd.gov/files/resource/61-2009/library/hb1071.pdf [hereinafter *H.B. 1071 Legislative History*]. Accordingly, the court takes judicial notice of these materials as documents within the public record and may consider them in connection with defendant's Rule 12(c) motion.

> oil, those monies are his. **While oil companies may see this as punitive, remember this does give the operator five months of using the money interest free.**

*Id.* at 25 (emphasis added); *see Tank*, 2013 WL 3766526, at *11.

Both parties argue the legislative history supports their view. Although some legislators refer to the 18% as a penalty, their statements characterize the purpose of the provision as remedial—as the North Dakota Magistrate Judge did in his orders. In light of the statute's initial purpose and the legislature's reasons for amending it in 1981 to benefit mineral owners with the timely payment of royalties, the legislative history lends support to the position that the statute's purpose is remedial.[3]

## V. Conclusion

For the reasons stated above, the court finds and concludes that the North Dakota Supreme Court would likely find the 18% interest amount in N.D.C.C. § 47–16–39.1 to be remedial rather than penal. The six-year statute of limitations contained in N.D.C.C. § 28-01-16(2) applies.

Burlington concedes for purposes of the motion that Rice's cause of action accrued on May 31, 2015. Rice filed this case on August 25, 2020. Thus, Rice's claim was timely filed within six years of its accrual.

---

[3] Burlington contends the 18% interest is clearly a penalty "when compared to North Dakota regulatory practice." [Doc. 31, p. 5]. It points to the state's published usury rate, which changes monthly, and provides the maximum rate of interest which may be charged for loans of money by nonregulated lenders. [*Id.*]. Burlington argues that because 18% is two and a half times the current usury rate, the statutory rate is a penalty. But the usury limitation in 1981, when the 18% interest amount was added by the North Dakota legislature, was 18%, the same rate as the late-payment statute. N.D. Att'y Gen. Op. 81-79 (July 31, 1981). Burlington cites no authority to support the proposition that whether a statutory interest rate is remedial or penal may switch back and forth over time depending on market conditions.

WHEREFORE, defendant's Motion for Judgment on the Pleadings [Doc. 31] is denied.

IT IS SO ORDERED this 21st day of January, 2022.

_____
GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE